Patrick L. Rocco (PR 8721)
Jennifer A. Sullivan (JS 6957)
Shalov Stone & Bonner LLP
163 Madison Avenue
P.O. Box 1277
Morristown, New Jersey 07962

*Liaison Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE LORD ABBETT MUTUAL FUNDS FEE LITIGATION | )<br>)<br>)<br>) |
| | ) |
| **THIS DOCUMENTS RELATES TO:  ALL ACTIONS** | )<br>)<br>) |

MASTER FILE: 04-cv-559 (WJM)

## PLAINTIFFS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

    **A.**      The Lord Abbett Funds Functioned as Integral Components of
One Unitary Organization and Shared Many Juridical Links With
Each Other ...................................................................................................... 3

    **B.**      The Economics of All the Funds Are Intertwined, and Wrongful
Charges to One Fund Impacted the Other Funds as Well........................... 4

    **C.**      Defendants Engaged in a Common Course of Wrongful Conduct
That Injured All the Funds and Their Shareholders.................................... 4

    **D.**      Plaintiffs Allege Wrongdoing That Directly Injured the Class
Members .......................................................................................................... 5

ARGUMENT ................................................................................................................. 7

    I.      THIS ACTION SHOULD BE CERTIFIED AS A CLASS ACTION .................. 7

    II.      THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED.............................. 8

        **A.**      The Class Is So Numerous That  Joinder of All Members Is
Impracticable................................................................................................... 8

        **B.**      Questions Of Law And Fact Common To The Members Of The
Class Exist....................................................................................................... 9

        **C.**      The Claims of Plaintiffs Are Typical of The Claims of The Class........... 10

        **D.**      Plaintiffs Will Fairly And Adequately Protect The Interests Of The
Class................................................................................................................ 11

    III.      THE REQUIREMENTS OF FED. R. CIV. P. 23(B)(3) ARE SATISFIED ........ 12

        **A.**      Common Questions of Law and Fact Predominate ................................... 13

        **B.**      A Class Action is Superior to Numerous Individual Actions................... 14

    IV.      PLAINTIFFS HAVE STANDING AND MAY BRING  THESE
CLAIMS ON BEHALF OF INVESTORS IN ALL THE FUNDS ...................... 17

V.    PLAINTIFFS MAY PROPERLY SERVE AS CLASS
      REPRESENTATIVES TO ASSERT THE SECTION 36(B) CLAIMS OF
      SHAREHOLDERS IN ALL LORD ABBETT FUNDS ...................................... 22

      A.    Supreme Court and Third Circuit Precedent Support Plaintiffs'
            Individual Standing and Ability to Represent the Proposed Class
            Under Section 36(b) ................................................................................ 22

      B.    The Language of Section 36(b) is Consistent With Class
            Certification ............................................................................................. 23

VI.   THE CLAIMS AT ISSUE IN THIS MOTION ARE DIRECT IN
      NATURE ............................................................................................................. 26

      A.    Plaintiffs' Section 36(b) Claim Is Direct .................................................. 26

      B.    Plaintiffs' State Law and Non-Section 36(b) Federal Claims are
            Direct Claims Suitable for Class Treatment ............................................. 27

            1.    Plaintiffs' State Law and Non-Section 36(b) Claims are
                  Direct Claims Under Maryland Law ............................................. 28

            2.    Plaintiffs' State Law and Non-Section 34(b) Claims are
                  Direct Claims Under Delaware Law ............................................. 30

CONCLUSION ............................................................................................................. 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alves v. Harvard Pilgrim Health Care, Inc.*,
    204 F. Supp. 2d 198 (D. Mass. 2002) ................................................................20

*Amchem Prods. v. Windsor*,
    521 U.S. 591, 615-16 (1997).........................................................................14, 16

*In re American Continental Corp./Lincoln Savs. & Loan Sec. Litig.*,
    794 F. Supp. 1424 (D. Ariz. 1992).....................................................................20

*In re AmerisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002) ..............................................................................7

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994)................................................................................9, 10

*In re Baldwin-United Corp. Litig.*,
    122 F.R.D. 424 (S.D.N.Y. 1986).........................................................................10

*Barnes v. American Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998)..................................................................................7

*Batra Inv. Research Corp.*,
    No. 89-0528, 1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct. 4, 1991) ...............21

*Baum v. Investors Diversified Services, Inc.*,
    409 F.2d 872 (7th Cir. 1969).........................................................................5, 29

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975)...............................................................................13

*Boesenberg v. Chicago T. & T. Co.*,
    128 F.2d 245 (7th Cir. 1942)................................................................................16

*Burks v. Lasker*,
    441 U.S. 471 (U.S. 1979)......................................................................................28

*In re Centocor, Inc. Sec. Litig. III*,
    No. 98-260, 1999 U.S. Dist. LEXIS 1224 (E.D. Pa. Jan. 27, 1999) ...............9, 12

*In re Cephalon Sec. Litig.*,
    No. 96-0633, 1998 U.S. Dist. LEXIS 12321 (E.D. Pa. Aug. 11, 1998).................9

*Cullen v. Whitman Med. Corp.*,
    188 F.R.D. 226 (E.D. Pa. 1999) .......................................................................7, 10

*Daily Income Fund, Inc. v. Fox,*
    464 U.S. 523 (1984) ..................................................................................2, 22, 24, 26

*De Ascencio v. Tyson Foods, Inc.,*
    No. 00-4294, 2002 U.S. Dist. LEXIS 13038 (E.D. Pa. July 17, 2002) ...................................8

*In re Dreyfus Aggressive Growth Mut. Fund Litig.,*
    No. 98-4318, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000) ...................2, 11, 17

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ...........................................................................................................7

*Eisenberg v. Gagnon,*
    766 F.2d 770 (3d Cir. 1985) ...................................................................................1, 7, 8, 11

*Fallick v. Nationwide Mut. Ins. Co.,*
    162 F.3d 410 (6th Cir. 1998) .........................................................................................2, 19

*Fitch v. Radnor Indus., Ltd.,*
    No. 90-2084, 1990 U.S. Dist. LEXIS 13568 (E.D. Pa. Oct. 9, 1990) ...................................14

*Fox v. Equimark Corp.,*
    No. 90-1504, 1994 WL 560994 (W.D. Pa. July 18, 1994) ...................................................14

*Georgine v. Amchem Prods.,*
    83 F.3d 610 (3d Cir. 1996) .................................................................................................11

*Goodman v. Lukens Steel Co.,*
    777 F.2d 113 (3d Cir. 1985) ...............................................................................................18

*Gratz v. Bollinger,*
    539 U.S. 244 (2003) .....................................................................................................17, 20

*Green v. Wolf Corp.,*
    406 F.2d 291 (2d Cir. 1968) ...............................................................................................13

*Haas v. Pittsburgh Nat'l Bank,*
    526 F.2d 1083 (3d Cir. 1975) ..................................................................................18, 20, 23

*Hicks v. Morgan Stanley & Co.,*
    2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003) ....................................................18

*Hoxworth v. Blinder, Robinson & Co.,*
    980 F.2d 912 (3d Cir. 1992) ...............................................................................................11

*In re IKON Office Solutions, Inc. Sec. Litig.,*
    191 F.R.D. 457 (E.D. Pa. 2000) ...........................................................................................8

*In re Itel Sec. Litig.,*
    89 F.R.D. 104 (N.D. Cal. 1981) .........................................................................................21

*Kamen v. Kemper Fin'l Servs.,*
    500 U.S. 90 (1991) ............................................................................22, 26, 27, 28

*Kitchens v. U.S. Shelter Corp.,*
    No. 82-1951, No. 3-0771, 1983 U.S. Dist. LEXIS 12812 (D.S.C. Oct. 13, 1983) ..............19

*Kromnick v. State Farm Ins. Co.,*
    112 F.R.D. 124 (E.D. Pa. 1986) .........................................................................9

*In re Lilco Sec. Litig.,*
    111 F.R.D. 663 (E.D.N.Y. 1986) ......................................................................16

*LaMar v. H & B Novelty & Loan Co.,*
    489 F.2d 461 (9th Cir. 1973)........................................................................20, 21

*In re ML-Lee Acquisition Fund III, L.P. and ML-Lee Acquisition Fund (Retirement
    Accounts) II, L.P. Sec. Litig.,*
    848 F. Supp. 527 (D. Del. 1994) ..............................................................2, 10, 17

*Mathews v. Kidder Peabody & Co.,*
    No. 95-85, 1996 U.S. Dist. LEXIS 17790 (W.D. Pa. Sept. 26, 1996) ................................14

*Maywalt v. Parker & Parsley Petroleum Co.,*
    147 F.R.D. 51 (S.D.N.Y. 1993)........................................................................19

*In re Mercedes Benz Antitrust Litig.,*
    213 F.R.D. 180 (D.N.J. 2003) .........................................................................13

*MobileMedia Sec. Litig.,*
    28 F. Supp. 2d 901 (D.N.J. 1998) .....................................................................20

*Moore v. Comfed Sav. Bank,*
    908 F.2d 834 (11th Cir. 1990).........................................................................21

*Newby v. Enron Corp.,*
    No. 01-3624, 2004 U.S. Dist. LEXIS 8158 (S.D. Tex. Feb. 24, 2004)................................21

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ..................................................................................17

*Parker v. Time Warner Entm't Co.,*
    198 F.R.D. 374 (E.D.N.Y. 2001) ......................................................................15

*Payton v. County of Kane,*
    308 F.3d 673 (7th Cir. 2002)..........................................................................21

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ..................................................................................14

*Prostic v. Xerox Corp.*,
    [1991 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶96,197 (D. Conn. July 19, 1991).........24

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998) ...............................................................................10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ..........................................................................16

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995)....................................................................2, 18

*Risinger v. Concannon*,
    201 F.R.D. 16 (D. Me. 2001) ..............................................................................24

*Roberts v. Heim*,
    670 F. Supp. 1466 (N.D. Cal. 1987) ...................................................................19

*Rosen v. Fidelity Fixed Income Trust*,
    169 F.R.D. 295 (E.D. Pa. 1995) ...........................................................................9

*Schur v. Friedman & Shaftan, P.C.*,
    123 F.R.D. 611 (N.D. Cal. 1988) ........................................................................19

*Shankroff v. Advest, Inc.*,
    112 F.R.D. 190 (S.D.N.Y. 1986)..........................................................................19

*Shelter Realty Corp. v. Allied Maint. Corp.*,
    75 F.R.D. 34 (S.D.N.Y. 1977).............................................................................13

*Sosna v. Iowa*,
    419 U.S. 393 (1975) ............................................................................................18

*Strougo v. Bassini*,
    282 F.3d 162 (2d Cir. 2002) ................................................................................27

*Sutton v. Medical Serv. Ass'n*,
    No. 92-4787, 1993 U.S. Dist. LEXIS 9763 (E.D. Pa. July 20, 1993) ..................18

*Tannenbaum v. Zeller*,
    552 F.2d 402 (2d Cir. 1977)................................................................................29

*Tedesco v. Mishkin*,
    689 F. Supp. 1327 (S.D.N.Y. 1988) ...................................................................19

*Thomas v. SmithKline Beecham Corp.*,
    201 F.R.D. 386 (E.D. Pa. 2001) ..........................................................................10

*W.P. v. Poritz*,
    931 F. Supp. 1187 (D.N.J. 1996) ..........................................................................8

*Wachtel v. Guardian Life Ins. Co.*,
    223 F.R.D. 196 (D.N.J. 2004) ........................................................................10, 13

*Weiss v. York Hospital*,
    745 F.2d 786 (3d Cir. 1984) .......................................................................8

*Woodward v. Online Information Serv.*,
    191 F.R.D. 502 (E.D.N.C. 2000).................................................................24

*Zinberg v. Wash. Bancorp., Inc.*,
    138 F.R.D. 397 (D.N.J. 1990) ....................................................................13

## STATE CASES

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004).........................................................................30

*Waller v. Waller*,
    187 Md. 185 (1946)..................................................................................28

## FEDERAL STATUTES

15 U.S.C. § 80a-2(a)(32)...................................................................................7, 29

15 U.S.C. § 80a-35(b) ......................................................................................22

15 U.S.C. § 80a-5..............................................................................................29

Fed. R. Civ. P. 23 ....................................................................................... *passim*

Public Policy Implications of Investment Company Growth
    (PPI) H.R. No. 2337, 89th Cong., 2d Sess. (1966) ...........................................25

S. Rep. No. 91-184 (1969) .........................................................................3, 25, 26

Plaintiffs Joseph C. White, Josephine Logan, Richard Curtis, Bo Bortner, James A. Pingitore and Philip Katz (collectively "Plaintiffs") respectfully submit this memorandum in support of their motion for certification of this action as a class action and their appointment as class representatives.

## PRELIMINARY STATEMENT

Plaintiffs seek certification of this action as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a class (the "Class") of all persons and entities who held one or more shares of the Lord Abbett mutual funds (the "Lord Abbett Funds" or the "Funds") listed on Exhibit A to the Complaint, during the period February 6, 1999 through November 8, 2003 (the "Class Period").

The Consolidated Amended Class Action Complaint (the "Complaint")[1] alleges violations of the Investment Company Act of 1940 (the "ICA"); the Investment Advisers Act of 1940; unjust enrichment; and breaches of common law fiduciary duties to the Class.[2]  As an action on behalf of investors who have been deceived and injured, it is similar to numerous investor class actions that have been routinely certified in federal courts. *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985).  Plaintiffs satisfy the requirements of Rule 23. Accordingly, Plaintiffs' Motion for Class Certification should be granted.

Plaintiffs may properly represent a class that includes the shareholders in all the Lord Abbett Funds, and not merely investors in the Funds owned by Plaintiffs.  The great weight of

---

[1]  Paragraphs of the Complaint are cited as "¶ __."

[2]  Plaintiffs seek certification pursuant to Rule 23 of all claims in the Complaint save two:  Count V (Section 215 of the Investment Advisers Act for violation of Section 206 of that Act), which is a derivative claim, and Count VI (violation of the New Jersey Consumer Fraud Act), which Plaintiffs are withdrawing.

authority holds that a class representative having a valid individual claim may sue on behalf of investors who purchased interests in entities that are different from the entities in which the Plaintiff had an interest, when the entities were similar and were commonly controlled, had significant juridical links with each other, and were injured by a common course of conduct. Courts have specifically certified such classes of mutual fund investors. *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-4318, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000); *In re ML-Lee Acquisition Fund III, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. Sec. Litig.*, 848 F. Supp. 527 (D. Del. 1994). In addition, many courts have reached the same result in analogous contexts. *E.g.*, *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (limited partnership investments); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) (participants in ERISA benefits plans).

In particular, Plaintiffs may properly assert their claims under Section 36(b) of the ICA on behalf of investors holding shares in mutual funds in which Plaintiffs have no holdings. Although Section 36(b) provides for an action by a security holder of a registered investment company "on behalf of such company," the mutual fund investors, not the funds, have the direct right to bring that claim. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 527 (1984). Plaintiffs have the normal right of all litigants to bring those claims on behalf of other similarly situated parties -- *i.e.*, the investors in the other funds who also have Section 36(b) claims -- so long as the requirements of Rule 23 are satisfied.

The economics of all the Lord Abbett Funds are deeply intertwined, *e.g.*, the Funds share expenses attacked as wrongful in this case. The legislative history confirms that where a complex of funds is involved, Section 36(b) requires the courts to evaluate the impact of

defendants' wrongful conduct on the entire complex, and not merely on the particular fund in which the Plaintiff purchased his or her shares. *See* S. Rep. No. 91-184, at 15 (1969) ("Senate Report"). That Congressional purpose supports a class certification that would encompass the interests of all the funds.

For the reasons set forth below, the proposed class should be certified.

## STATEMENT OF FACTS

### A.     The Lord Abbett Funds Functioned as Integral Components of One Unitary Organization and Shared Many Juridical Links With Each Other

As of September 30, 2003, defendant Lord, Abbett & Co. LLC ("Lord Abbett") managed over $62.1 billion in assets in approximately 45 mutual funds. ¶ 20.[3]   The individual Lord Abbett Funds are open-ended management companies consisting solely of the capital invested by mutual fund shareholders. ¶ 78.   As pools of investor assets, the Funds are managed and administered by a common body of officers and employees of Lord Abbett. *Id.*   The individual Funds have no separate officers, directors, advisors, or employees. *Id.*   Thus, in substance, the Lord Abbett Funds function as components of one unitary organization. *Id.*

Lord Abbett is a registered investment adviser and had ultimate responsibility for overseeing the day-to-day management for each of the Lord Abbett Funds. ¶ 20.  The Funds also had a board of directors comprised of the same nine individuals. ¶¶ 67-75. Each Lord Abbett director was charged with overseeing the 14 "Lord Abbett-sponsored funds" (the registrants) that

---

[3]   Lord Abbett organizes its mutual funds in a pyramid structure. ¶ 79.  At the top of the pyramid are what Lord Abbett refers to in its public filings as the "Lord Abbett-sponsored funds."  When an investor buys shares in a Lord Abbett mutual fund, he or she buys shares in subdivisions of the "Lord Abbett-sponsored funds."  Lord Abbett refers to these subdivisions as "portfolios" or "series."  There are 14 "Lord Abbett-sponsored funds" that register their "portfolios" or "series" with the SEC, and they, rather than the Funds themselves, are the actual registrants with respect to the issuance of Fund shares.

consisted of 45 separate "portfolios" comprising the Lord Abbett Funds. *E.g.,* Statement of

Additional Information ("SAI") for Lord Abbett Research Fund, Inc. at p. 12, Certification of

Kim Levy In Support of Plaintiffs' Motion for Class Certification Ex. A ("Levy Cert.").

      The Lord Abbett Funds also had a common distributor, Lord Abbett Distributor LLC

("Lord Abbett Distributor") which marketed and sold the Funds as the principal underwriter.

¶ 77.  Information on the Funds was distributed to potential investors through prospectuses (the

"Prospectuses"), pursuant to which the Funds were offered.  ¶ 123.  With respect to the

statements and omissions relevant to this litigation, the Prospectuses contained substantially

identical language.  ¶ 125.

     **B.**     **The Economics of All the Funds Are Intertwined, and Wrongful Charges to**
              **One Fund Impacted the Other Funds as Well**

      The Funds have many economic interrelationships and share expenses with one another.

¶ 81.  For example, the May 1, 2003 SAI for the Mid-Cap Value Fund discloses that research

costs (alleged herein to be excessive and improper) are shared by the Funds:

> Such [research] services may be used by Lord Abbett in servicing ***all their***
> ***accounts***, and not all such services will necessarily be used by Lord Abbett in
> connection with their management of the [Mid-Cap Value] Fund.  Conversely,
> ***such services furnished in connection with brokerage on other accounts***
> ***managed by Lord Abbett may be used in connection with their management of***
> ***the [Mid-Cap Value] Fund...*** [Emphasis added.]

SAI for Mid-Cap Value Fund at p. 16, Levy Cert. Ex. B.

      Therefore, in order to determine the amount owing to any single Fund it will be necessary

to perform an accounting of all Funds.

     **C.**     **Defendants Engaged in a Common Course of Wrongful Conduct That**
              **Injured All the Funds and Their Shareholders**

      Lord Abbett improperly used the assets of the Funds and Fund investors to pay

brokerages to aggressively promote the Funds to investors through "shelf-space" revenue sharing

programs, directed brokerage, improper "12b-1" fee payments, and unauthorized "soft dollar" commission arrangements. ¶¶ 2, 8-9, 83-93, and 103-112. These various fees and expenses, as well as the aggregate advisory fee paid to the Funds' advisor, were excessive and injured the Funds and its investors because those charges benefited only the adviser and its affiliates, not the funds or their shareholders. ¶¶ 2-4, 8-9, 83-4, 87-90, 103, and 107-112.

Defendants kept their actual shelf-space arrangements secret as the programs presented unmanageable conflicts of interest, pitting the financial interest of the broker against that of its clients. ¶ 93. The Funds' Prospectuses also failed to disclose the truth about Defendants' strategies for growth, shelf-space plans, directed brokerage, 12b-1 fees, and soft dollars. ¶ 125. All of the Prospectuses were substantially the same in this regard and included the same false and misleading statements and omissions. *See* ¶¶ 123-135. As a result of this deception, shareholders were misled into continuing to hold Fund shares without realizing that they were routinely paying fees and expenses that provided no benefit to them or the Funds.

Defendants' scheme impacted all the Funds. The single course of conduct engaged in by Defendants was possible because the Funds were managed by a single investment adviser, with a single distributor, and a common board of directors. Defendants' practices constituted breaches of the fiduciary duties owed by defendants to Plaintiffs, the Class, and the Funds.

**D.     Plaintiffs Allege Wrongdoing That Directly Injured the Class Members**

A mutual fund investor enters into what is, in effect, a service agreement with the investment company pursuant to which management and advisory services are provided.[4] As a

---

[4] *See, e.g., Baum v. Investors Diversified Services, Inc.*, 409 F.2d 872, 874 (7th Cir. 1969) (a mutual fund share "is, in essence, a service contract between the investor and the investment company").

result, the purchaser's mutual fund investment is subject to continuing future fees and expenses relating to those services.

Consistent with that reality, the SAIs for the Lord Abbett Funds describe the fees and expenses relevant to this litigation as directly impacting the investors. For example, a Fund's Registration Statement states that a table describing the Fund's fee structure "describes the fees and expenses that *you may pay* if you buy and hold shares of the Fund." Registration Statement for Mid-Cap Value Fund at p. 4, Levy Cert. Ex. B. [Emphasis added.] The table includes "Management Fees" and "Distribution and Service (12b-1) Fees," which are at the heart of this action. A footnote to the table states that, "[b]ecause 12b-1 fees are paid out on an ongoing basis, over time they will increase the cost of *your* investment and *may cost you more* than paying other types of sales charges." *Id.* (Emphasis added.) This language explicitly recognizes that, in substance, mutual fund fees paid to investment advisers and their affiliates are paid by investors. Such disclosures do not exist for traditional corporations, where contracts entered into by the corporation have only an indirect impact on the value of a shareholder's stock. In the mutual funds context, the impact is *direct*.

With respect to the Funds' 12b-1 plans, the SAI covering Funds registered by the Lord Abbett Research Fund, Inc. (the "April 1, 2003 SAI"), states: "Each Plan is a compensation plan, allowing *each class to pay* a fixed fee to Lord Abbett distributors...." April 1, 2003 SAI at p. 23, Levy Cert. Ex. A. (Emphasis added.) The prospectus for the Lord Abbett Growth Opportunities Fund states that "shareholder fees," which it describes as "fees paid directly from your investment", include both "Management Fees" and "Distribution and Service (12b-1) Fees." Prospectus For Growth Opportunities Fund at p. 4, Levy Cert. Ex. A.

Moreover, the April 1, 2003 SAI states that "the dividends payable to Class B and Class

C shareholders will be reduced by the expenses borne solely by each of these classes . . . ." April

1, 2003 SAI at p. 26, Levy Cert. Ex. A. Finally, the Lord Abbett shareholders are all entitled to

redeem their shares at net asset value per share. Registration Statement for Lord Abbett

Research Fund Inc., at p. 15, Levy Cert. Ex. A. That redemption price is immediately impacted

by each assessment of the fees and expenses that are complained of in this case. *See* 15 U.S.C. §

80a-2(a)(32) (defining "redeemable security"). All those fees and expenses, once assessed,

immediately reduce the amount class members are entitled to receive for their shares if they opt

to redeem them. Again, this *results in a direct* impact on Class members.

In light of the foregoing, it is evident that a substantial portion of the damages at issue in

this litigation were inflicted directly upon the Funds' shareholders.

**ARGUMENT**

**I.     THIS ACTION SHOULD BE CERTIFIED AS A CLASS ACTION**

Investor actions are particularly appropriate for class treatment given the large number of

shares involved and the typically small amount of individual damages relative to the costs of

litigation. *See, e.g., In re AmerisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 120 (D.N.J. 2002), *citing*

*Eisenberg*, 766 F.2d at 785 (3d Cir. 1985). In addition, by providing a single forum in which to

litigate the same or similar claims, a class action affords an indispensable mechanism for the

conservation of judicial resources.

In considering a class certification motion under Rule 23, the Court may not delve into

the merits of the dispute. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Barnes v.*

*American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998). Rather, the Court must accept as true

the factual allegations of the Complaint. *See Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226,

228 (E.D. Pa. 1999).

7

Due to the importance of the class action device, the requirements of Rule 23 "should be given a liberal rather than a restrictive construction." *De Ascencio v. Tyson Foods, Inc.*, No. 00-4294, 2002 U.S. Dist. LEXIS 13038, at *5-6 (E.D. Pa. July 17, 2002), *rev'd on other grounds*, 342 F.3d 301 (3d Cir. 2003). The Third Circuit has declared that "[t]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *Eisenberg*, 766 F.2d at 785.

## II.    THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED

Under Fed. R. Civ. P. 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Each element of Rule 23(a) has been met in this case.

### A.    The Class Is So Numerous That Joinder of All Members Is Impracticable

For a class action to be certified, the proposed class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). For the purposes of Rule 23(a)(1), "[i]mpractibility does not mean impossibility of joinder, and the court should make common sense assumptions [on this issue]." *In re IKON Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 462 (E.D. Pa. 2000) (citations omitted). The Court need only find that the difficulty or inconvenience of joining all members of the class makes class litigation preferable. *See, e.g.,* *W.P. v. Poritz*, 931 F. Supp. 1187, 1192 (D.N.J. 1996).

There is no fixed number of class members that either compels or precludes certification. "[W]hile there are exceptions, numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the requirement." *Weiss v. York Hospital*, 745 F.2d 786,

808 n.35 (3d Cir. 1984). The exact size of the class need not be known as long as general knowledge and common sense indicate that the class is large.[5]

Without doubt, there are at least thousands of Class members. As of September 30, 2003, the Lord Abbett Funds collectively held over $62.1 billion in assets for 45 Funds. ¶ 20. The names and addresses of Class members can be ascertained from the books and records maintained by Lord Abbett, Lord Abbett Distributors, and the Lord Abbett Funds. Thus, numerosity is satisfied.

**B.      Questions Of Law And Fact Common To The Members Of The Class Exist**

Rule 23(a)(2) requires that to maintain a class action, there must be questions of law or fact common to the class. A common question is "one which arises from a 'common nucleus of operative facts' regardless of whether 'the underlying facts fluctuate over the class period and vary as to individual claimants'." *In re Centocor, Inc. Sec. Litig. III*, No. 98-260, 1999 U.S. Dist. LEXIS 1224, at \*5 (E.D. Pa. Jan. 27, 1999) (quoting *Kromnick v. State Farm Ins. Co.*, 112 F.R.D. 124, 128 (E.D. Pa. 1986)). The Third Circuit has held that the commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). *See also Centocor*, 1999 U.S. Dist. LEXIS 1224, at \*5 (Rule 23(a)(2) "does not require that every question of law or fact be common to every member of the class").

"Commonality exists when proposed class members challenge the same conduct of the defendants." *Rosen v. Fidelity Fixed Income Trust*, 169 F.R.D. 295, 298 (E.D. Pa. 1995). Plaintiffs' claims and those of other Class members all arise from the same body of facts as they

---

[5]  *See In re Cephalon Sec. Litig.*, No. 96-0633, 1998 U.S. Dist. LEXIS 12321, at \*5 (E.D. Pa. Aug. 11, 1998).

were all injured by the same actions of the same group of Defendants in extracting excessive fees

and allowing directed brokerage. *See Wachtel v. Guardian Life Ins. Co.*, 223 F.R.D. 196, 213

n.31 (D.N.J. 2004). In addition, the claims of Plaintiffs and other Class members arise under

identical legal theories. *See ML-Lee Acquisition*, 848 F. Supp. at 558.

### C.       The Claims of Plaintiffs Are Typical of The Claims of The Class

Typicality requires that the claims or defenses of the representative parties be typical of

the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). A named plaintiff's claims will

generally be found to be typical of the claims of other class members where the named plaintiff

and the class members "'challenge [ ] the same unlawful conduct.'" *Thomas v. SmithKline

Beecham Corp.*, 201 F.R.D. 386, 394 (E.D. Pa. 2001) (quoting *Baby Neal*, 43 F.3d at 58).

Factual differences will not defeat class certification where, as here, the claims of Plaintiffs and

of other Class members all arise from the same events or practices or course of conduct and are

based on the same legal theory or theories. *Thomas*, 201 F.R.D. at 394; *Cullen*, 188 F.R.D. at

230. "[T]he test, ultimately, is whether the class representative will promote the interests of the

class as he protects his own." *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y.

1986).

Typicality does not require the class representative's claims be identical to those of class

members. As the Third Circuit has held:

> [C]ases challenging the same unlawful conduct which affects both the named
> plaintiffs and the putative class usually satisfy the typicality requirement
> irrespective of the varying fact patterns underlying the individual claims . . .
> "Even relatively pronounced factual differences will generally not preclude a
> finding of typicality where there is a strong similarity of legal theories" or where
> the claims arise from the same practice or course of conduct.

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 311 (3d Cir. 1998).

In the case at bar, Plaintiffs have claims not only similar, but virtually identical, to the members of the Class. Plaintiffs allege that Defendants engaged in a course of conduct that affected all of the Lord Abbett Funds and their shareholders. Defendants charged excessive fees and commissions to the investors in all the Lord Abbett Funds and to the Funds themselves in order to improperly pay and induce brokers to steer investors into Lord Abbett Funds. Defendants further failed to disclose these practices in substantially similar Prospectuses that covered the Funds. Accordingly, Plaintiffs and other members of the Class have been damaged in the same way by the same course of wrongful conduct by Defendants. In addition, the claims of all Class members derive from the same legal theories.

The typicality of Plaintiffs' claims is not affected by the fact that they do not own shares in each and every one of the Lord Abbett Funds. In a decision specifically addressing that issue, the *Dreyfus* court stated, "Courts have repeatedly held that on allegations such as these, class representatives need not have invested in each security so long as the plaintiffs have alleged a single course of wrongful conduct with regard to each security." 2000 U.S. Dist. LEXIS 13469, at *8. In *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992), the Third Circuit held that although there were only 15 class representatives for 23 securities, that amount of coverage "fully satisfies the requirements of the Rule." *See id.* ("the fact that the representatives had invested in only two of the three limited partnerships charged with violating federal securities laws did not make their claims atypical"). *See also Eisenberg*, 766 F.2d 786.

**D.      Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class**

Plaintiffs must also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts have established a two prong test for this requirement: (1) "the interests of the named plaintiffs must be sufficiently aligned with those of the absentees," and (2) "class counsel must be qualified and must serve the interests of the entire class." *Georgine v. Amchem*

*Prods.*, 83 F.3d 610, 630 (3d Cir. 1996). The requirement of fair and adequate representation in Rule 23(a)(4) is "designed to ensure that absentee class members' interests are fully pursued" by the class representative actually before the court. *Centocor*, 1999 U.S. Dist. LEXIS 1224, at *8.

Both prongs of the "adequacy" test have been met here. Plaintiffs' interests are co-extensive, and not in conflict, with the interests of the Class members. Further, Plaintiffs' counsel are capable of prosecuting this litigation. Plaintiffs' counsel have extensive experience in the successful prosecution of class actions on behalf of injured investors. *See* Firm Resumes of Milberg Weiss Bershad & Schulman LLP, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Shalov Stone & Bonner LLP, Murray, Frank & Sailer LLP, and Weiss and Lurie.[6] Levy Cert. Ex. C-G.

## III.    THE REQUIREMENTS OF FED. R. CIV. P. 23(B)(3) ARE SATISFIED

In addition to meeting the prerequisites of Rule 23(a), this action also satisfies Rule 23(b), which requires that the proposed class action meet any one of three conditions set forth in that subsection.[7] This action easily satisfies Rule 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only

---

[6]    On November 15, 2004, the Weiss & Lurie firm filed its Notice of Change In Firm Name, substituting for the Weiss & Yourman firm.

[7]    While Plaintiffs seek class certification under Rule 23(b)(3), their claims under Section 36(b) of the ICA also may be appropriately certified under Rule 23(b)(1)(B), which provides for certification when the prosecution of separate actions would create a risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). The action may also be appropriately certified under Rule 23(b)(1)(A), which provides for certification when the prosecution of separate actions creates a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. . . ." Fed. R. Civ. P. 23(b)(1)(A).

individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### A.    Common Questions of Law and Fact Predominate

As discussed above, there are a host of questions of law and fact common to the members of the proposed Class. These questions clearly predominate over any possible individual questions because the alleged wrongful conduct was the same with respect to all Class members.[8]

There are no individual issues likely to be raised in the litigation of this class action that would defeat predominance. The fact that multiple mutual funds are involved does not defeat predominance. *See Wachtel*, 223 F.R.D. at 213 ("The existence of different [health benefit] plans does not outweigh the predominance of the common questions.").

Common issues also predominate because the Funds functioned as integral parts of a unitary organization and shared expenses. Therefore the impact of charges to one Fund will be relevant to the claims of all Funds. Courts have held that individual issues of damages should not defeat certification.[9] Here, damages involving excessive charges to the Funds and the shareholders can easily be calculated using a simple, common formula. *See, e.g., Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34, 38 (S.D.N.Y. 1977).

---

[8]   Courts have repeatedly recognized that the proper focus of the predominance test is on the defendants' conduct. *In re Mercedes Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003). Here, Plaintiffs allege Defendants treated all of Funds and shareholders identically.

[9]   *See, e.g., Zinberg v. Wash. Bancorp., Inc.*, 138 F.R.D. 397, 402 (D.N.J. 1990); *Green v. Wolf Corp.*, 406 F. 2d 291, 301 (2d Cir. 1968); *Blackie v. Barrack*, 524 F.2d 891, 908-10 (9th Cir. 1975).

**B.     A Class Action is Superior to Numerous Individual Actions**

Class certification offers judicial efficiencies because it permits common claims and

issues to be tried only once, with binding effect on all parties.  It also avoids the possibility of

inconsistent adjudications and facilitates settlement by permitting agreements that potentially

bind all claimants.

Here, the individual claims of many Class members are too small relative to the costs of

litigation for each individual Class member to maintain a separate action.  The class action

device is for such injured persons the only viable vehicle by which they can obtain a remedy.

The notion that such claims could be litigated individually is unrealistic and contrary to the

philosophy of Rule 23.[10]

Rule 23(b)(3) lists four non-exclusive factors bearing on the superiority requirement.  *See*

*Amchem Prods. v. Windsor*, 521 U.S. 591, 615-16 (1997).  These factors are:

> (a) the interest of members of the class in individually controlling the prosecution
> or defense of separate actions; (b) the extent and nature of any litigation
> concerning the controversy already commenced by or against members of the
> class; (c) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; (d) the difficulties likely to be encountered in the
> management of a class action.

*Mathews v. Kidder Peabody & Co.*, No. 95-85, 1996 U.S. Dist. LEXIS 17790, at *12 (W.D. Pa.

Sept. 26, 1996).  As discussed below, all of these factors weigh heavily in favor of certification

here.

---

[10]  *See Fox v. Equimark Corp.*, No. 90-1504, 1994 WL 560994, at *6 (W.D. Pa. July 18, 1994);
*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  To deny class certification in cases
such as this would be to "clos[e] the door of justice to all small claimants.  This is what we think
the class suit practice was to prevent." *Fitch v. Radnor Indus., Ltd.*, No. 90-2084, 1990 U.S.
Dist. LEXIS 13568, at *19 (E.D. Pa. Oct. 9, 1990).

The first factor addresses whether the interest of class members in conducting separate lawsuits is so strong as to require denial of class certification. *See Parker v. Time Warner Entm't Co.*, 198 F.R.D. 374 (E.D.N.Y. 2001). Considerations relevant to this inquiry include the degree of "cohesion" among class members, whether "the amounts at stake for individuals . . . [are] so small that separate suits would be impracticable" and the extent to which "separate suits would impose . . . [burdens] on the party opposing the class, or upon the court calendars . . . ." Fed. R. Civ. P. 23, advisory committee note to 1966 amendments.

Here, it is unlikely that Class members would prefer to pursue the prosecution of their individual claims because of the prohibitive expense involved. If they had so desired, they would have brought individual actions. Further, if Class members wish to do so at a later stage, they will have the opportunity to opt out of the Class. Inconsistent or varying adjudications will thus be avoided and fairness and efficiency will be promoted by certification of the Class requested here.

The second factor requires the Court to consider the extent and nature of any litigation concerning the controversy already commenced by or against members of the class. Plaintiffs are unaware of any similar lawsuits brought by individuals against Lord Abbett. This suggests there is little individual interest in prosecuting actions. Accordingly, this factor further indicates the superiority of maintaining this suit as a class action.

The third superiority factor is the desirability of conducting the litigation in a particular forum. Defendants can hardly complain that this is an inconvenient forum as Lord Abbett maintains its principal executive offices in this District.

The fourth and final Rule 23(b)(3) factor is "the difficulties likely to be encountered in the management of a class action." *Amchem*, 521 U.S. at 616. The District Court in *Prudential* summarized the law construing this standard:

> When courts and counsel work together to manage increasingly complex and large-scale litigation, "experience . . . shows that visions of unmanageability soon disappear." Moreover, most courts hold that manageability difficulties cannot support denial of class certification when no other practical litigation alternative exists. (citations omitted).

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 525 (D.N.J. 1997).

Management of this case as a class action presents no unusual difficulties. Class actions of this size are common and present no significant management problems. *See In re Lilco Sec. Litig.*, 111 F.R.D. 663, 667 (E.D.N.Y. 1986).

Finally, although the certification is sought under Rule 23(b)(3), the Court may also view the proposed certification as properly falling under Rule 23(b)(1)(B). In this regard, the Advisory Committee Note to the 1966 Amendment of Rule 23 states that Rule 23(b)(1)(B) recognizes the appropriateness of class certification in the very situation presented here:

> Clause (B): This clause takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter. The vice of an individual action would lie in the fact that the other members of the class, thus practically concluded, would have had no representation in the lawsuit. [...]
>
> The same reasoning applies to an action which charges a breach of trust by an indenture trustee *or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust. See Boesenberg v. Chicago T. & T. Co.*, 128 F.2d 245 (7th Cir. 1942) (additional citation omitted).

Fed. R. Civ. P. 23, advisory committee note (emphasis added). Precisely that situation exists in the present case. Plaintiffs seek to recover for breaches of fiduciary duty affecting a large number of Funds and shareholders and requiring an accounting to restore the subject of the trust.

In sum, the litigation of this action as a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## IV.    PLAINTIFFS HAVE STANDING AND MAY BRING  THESE CLAIMS ON BEHALF OF INVESTORS IN ALL THE FUNDS

In *Dreyfus*, 2000 U.S. Dist. LEXIS 13469, the court certified plaintiffs who invested in one fund to represent purchasers in another fund, stating:

> Courts have repeatedly held that on allegations such as these, class representatives need not have invested in each security so long as the plaintiffs have alleged a single course of wrongful conduct with regard to each security.  Courts have not addressed this concern *vis a vis* the doctrine of standing but rather have examined such concerns pursuant to Rule 23(a)(3)'s typicality requirement.

*Id*. at *8.  In *Dreyfus*, certification was supported by the same factors that exist in this case:

> Here, the claims of the named plaintiffs and prospective class members derive from the same course of events.  The plaintiffs have alleged that both Funds made similar misrepresentations and omissions in the Registration Statements, Prospectuses, Statements of Additional Information and annual and semi-annual reports used to sell the Funds. . . . And indeed the claims of the named plaintiffs and prospective class members are based on the same legal theories.

2000 U.S. Dist. LEXIS 13469, at *14.

Similarly, in *ML-Lee Acquisition Fund*, 848 F. Supp. 527, the defendants argued that the proposed class representatives could not represent investors in a mutual fund that they did not own.  The court rejected this contention due to the similarity of the related mutual funds and of the wrongdoing that impacted both funds at issue.  *Id.*

Standing is a prerequisite in any action, including a class action, *see O'Shea v. Littleton*, 414 U.S. 488, 494 (1974), and a potential class representative must possess standing to assert an individual claim.  *See Gratz v. Bollinger*, 539 U.S. 244, 285 n.5 (2003).  Once the plaintiff's standing to assert his or her claim has been established, the plaintiff's ability to represent the class depends solely on whether the requirements of Rule 23 are met.  As stated by the Supreme Court in *Sosna v. Iowa*:

A named plaintiff in a class action must show that the threat of injury in a case such as this is "real and immediate," not "conjectural" or "hypothetical." . . . This conclusion does not automatically establish that appellant is entitled to litigate the interests of the class she seeks to represent, *but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to "fairly and adequately protect the interests of the class."* Rule 23(a).

419 U.S. 393, 402-03 (1975) (citations omitted) (emphasis added). *See Goodman v. Lukens Steel Co.*, 777 F.2d 113, 122 (3d Cir. 1985) ("[C]ontrary to the defendants' contentions, the issue here is one of compliance with the provisions of Rule 23, not one of Article III standing. Each of the named plaintiffs has presented claims of injury to himself and has alleged facts which present a case or controversy under the Constitution."), *aff'd on other grounds*, 482 U.S. 656 (1987).[11] *Accord Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2003 U.S. Dist. LEXIS 11972, at *19-20 (S.D.N.Y. July 16, 2003).

The Third Circuit has held that where a plaintiff does not have standing to assert the same claims as a portion of the proposed class members, but the plaintiff's claim is closely related to the claims of those class members because it arose from defendants' violation of a single statute, the plaintiff could properly represent the proposed class. *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1089 (3d Cir. 1975).

Analogous cases also confirm that Plaintiffs may represent purchasers of other Funds, in light of the similarity of the claims of all Class members against all Defendants and the close interrelationship and juridical links of all the Funds with each other and Defendants. *See, e.g., In re Prudential Ltd. P'ship Litig.*, 163 F.R.D. at 208 (limited partnership investments); *Maywalt v.*

---

[11]  Even where courts have addressed this issue in terms of standing, the outcome has been the same, permitting a plaintiff to represent other securities, ERISA plans, and mutual funds in addition to his or her own. *E.g., Sutton v. Medical Serv. Ass'n*, No. 92-4787, 1993 U.S. Dist. LEXIS 9763, at *13 (E.D. Pa. July 20, 1993) (ERISA plans).

*Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993) (plaintiffs who invested in three limited partnerships could represent persons who had invested in two other limited partnerships, where, as here, the complaint alleged that investors in all five limited partnerships were victims of a single pattern of fraud by defendants).[12]

*Fallick*, 162 F.3d 410, is directly on point. There the plaintiff alleged that Nationwide breached its fiduciary duties with respect to the ERISA plan of which he was a member and other ERISA plans of which he was not a member. The district court dismissed the claims as to all ERISA plans other than the plaintiff's plan on standing grounds. *Id.* at 411-12. The Sixth Circuit reversed, holding that the district court's reasoning was "fundamentally flawed" because it confused the issue of a plaintiffs Article III standing with the Rule 23 issues relevant to his ability to sue on behalf of a class. *Id.* at 422. The court concluded that "once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." *Id.* at 424. The *Fallick* court also cited with approval authority holding that when a single defendant offers a range of ERISA plans, an individual in one plan can represent a class of plaintiffs -- including some belonging to other plans -- as long as "the gravamen of the plaintiff's challenge is to the general practices [of the defendant] which affect all of the plans." *Id.* at 422.

---

[12] *See also Tedesco v. Mishkin*, 689 F. Supp. 1327, 1335-36 (S.D.N.Y. 1988) (investors in various companies and partnerships controlled by defendants could represent a class including investors in other companies and partnerships); *Schur v. Friedman & Shaftan, P.C.*, 123 F.R.D. 611 (N.D. Cal. 1988) (purchasers of securities of one limited partnership may represent purchasers of other partnerships); *Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 193-94 (S.D.N.Y. 1986); *Roberts v. Heim*, 670 F. Supp. 1466, 1490-91 (N.D. Cal. 1987) (same); *Kitchens v. U.S. Shelter Corp.*, No. 82-1951, No. 3-0771, 1983 U.S. Dist. LEXIS 12812 (D.S.C. Oct. 13, 1983) (permitting named plaintiffs to represent purchasers of interests in 12 separate limited partnerships, even though representatives held interests in only three of the partnerships).

Similarly, many cases hold that a plaintiff who purchased one type of a corporation's securities may represent persons who purchased other types of the corporation's securities, when purchasers of both types of securities were subjected to a common course of wrongful conduct. *See, e.g., In re American Continental Corp./Lincoln Savs. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1461 (D. Ariz. 1992); *MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 911 n.7 (D.N.J. 1998).[13]

Here all the Defendants and all the Funds are juridically linked with each other, making collective prosecution of this action the most efficient means for resolution of the dispute. The Third Circuit in *Haas*, 526 F.2d at 1095 n.15, described the "juridical link doctrine" as allowing plaintiff to bring a class claim against a defendant as to which he or she lacks standing if "all defendants are juridically related and a single disposition of the entire dispute would be expeditious." *Id.* at 1096 (citing *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973)).

The juridical link doctrine is properly applied where efficiency and expediency allow plaintiffs to join together to address ***common wrongs*** by a group of defendants.[14] "The doctrine is a powerful tool that can allow a plaintiff's lawyer to force many defendants (and what might

---

[13]   *Gratz v. Bollinger*, 539 U.S. 244, also confirms that the proper focus is on the commonality of the claims asserted, rather than whether the plaintiff is identically situated with every other member of the Class. In *Gratz*, plaintiff sought to represent applicants to the freshman class at the University of Michigan and applicants to transfer to the University. *Id.* at 266 n.16. The Court found that the class representative who did not fit both categories could bring an action on behalf of both the freshman and transfer applicants because the University applied the same admission standard to both groups. *Id.* at 266.

[14]   In *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198 (D. Mass. 2002), two class representatives brought an ERISA class action against five defendants. Even though neither plaintiff was ever a member of an ERISA plan that the defendants sponsored, the District of Massachusetts concluded that "plaintiffs' claims against [defendants] should not be dismissed for lack of standing. Because these defendants [were] wholly[-]owned affiliates of [the corporate defendant], in which plaintiffs were participants, and the copayment plan provisions [were] substantially the same, a single resolution of the dispute would be expeditious." *Id.* at 205.

otherwise be numerous class actions) into a single lawsuit at a substantially reduced cost."
*Newby v. Enron Corp.*, No. 01-3624, 2004 U.S. Dist. LEXIS 8158, at \*108 (S.D. Tex. Feb. 24,
2004). *See also Payton v. County of Kane*, 308 F.3d 673, 678-79 (7th Cir. 2002) ("if the
plaintiffs as a group -- named and unnamed -- have suffered an identical injury at the hands of
several parties related by way of a conspiracy or concerted scheme, or otherwise 'juridically
related in a manner that suggests a single resolution of the dispute would be expeditious,' the
claim could go forward") (quoting *La Mar*, 489 F.2d 461).[15]

The rationale of the juridical link doctrine is applicable here. As discussed in the
Statement of Facts, *supra*, there are multiple juridical links interconnecting all the Funds and all
the Defendants. Under the juridical link doctrine, the Funds would be assured of efficient and
consistent treatment. *See Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir. 1990)
(While "[o]ther named plaintiffs could be supplied to match with each named defendant [...] it
would be unwieldy to do so. [...] The case is simpler and more economical with the class of
plaintiffs and the named defendants.").[16]

---

[15]   *See also In re Itel Sec. Litig.*, 89 F.R.D. 104, 123 (N.D. Cal. 1981) ("that each underwriter
sold securities pursuant to the same Registration Statement and Prospectus does seem to be a
juridical link and it can certainly be said that class treatment of the dispute would be
expeditious").

[16]   The juridical links shared by certain of the Funds include the fact that various groups of
Funds are registered for issuance of shares by the same Lord Abbett registrant. At least one
court has held that in such a situation, a plaintiff has standing to sue under ICA Section 36(b) for
the benefit of all the funds covered by the same registrant. *Batra Inv. Research Corp.*, No. 89-
0528, 1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct. 4, 1991).

V.      **PLAINTIFFS MAY PROPERLY SERVE AS CLASS REPRESENTATIVES TO
        ASSERT THE SECTION 36(B) CLAIMS OF SHAREHOLDERS IN ALL LORD
        ABBETT FUNDS**

Section 36(b) of the ICA gives a security holder of a registered investment company the

right to bring an action against an investment adviser and its affiliates "on behalf of such

company" for breach of fiduciary duty. *See* 15 U.S.C. § 80a-35(b).[17]  Plaintiffs bring their

individual Section 36(b) claims on behalf of the investment companies in which they acquired

shares, and also seek to represent the investors in all the Funds with respect to their Section 36(b)

claims on behalf of those companies.

A.      **Supreme Court and Third Circuit Precedent Support Plaintiffs' Individual
        Standing and Ability to Represent the Proposed Class Under Section 36(b)**

The Supreme Court has held that a plaintiff's right to sue under Section 36(b) is not

secondary, but rather a primary right, because mutual funds themselves have no cause of action

under Section 36(b). *Daily Income v. Fox*, 446 U.S. 523.  Even though an investor's recovery of

damages under Section 36(b) goes to the fund, only the individual investors (and the SEC) have

the right to bring claims under that statute. *Id*. at 535 n.11 ("The legislative history of §36(b)

makes clear that Congress intended the perhaps unique 'right of a corporation' established by

§36(b) to be asserted by the company's security holders and not by the company itself.") *See*

*also Kamen v. Kemper Fin'l Servs.*, 500 U.S. 90, 108 (1991) (holding that Section 36(b) claims

are "direct rather than derivative").

---

[17]  Section 36(b) states in relevant part:  "An action may be brought under this subsection by the
[Securities and Exchange] Commission, or by a security holder of such registered investment
company on behalf of such company, against such investment adviser, or any affiliated person of
such investment adviser, or any other person enumerated in subsection (a) of this section who
has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in
respect of such compensation or payments paid by such registered investment company or by the
security holders thereof to such investment adviser or person."  15 U.S.C. § 80a-35(b).

In addition to their individual claims, Plaintiffs also have the normal rights of any litigant under Rule 23 to bring claims for the benefit of other parties similarly situated who have been injured by the same wrongdoing. Here, those other parties are the shareholders of Funds in which Plaintiffs do not hold interests. Those persons also have claims under Section 36(b) to obtain relief on behalf of their Funds for the same wrongdoing that was inflicted on the Funds in which Plaintiffs are shareholders. Therefore, Plaintiffs are entitled to serve as class representatives on behalf of those other shareholders for the purpose asserting their claims under Section 36(b).

For the reasons given at pages 17-21, *supra*, Plaintiffs' lack of any specific ownership in the other Funds does not preclude certification of the Class sought here. For example, in *Haas*, 526 F.2d 1083, the Third Circuit held that a plaintiff who had standing to sue the defendant only on her consumer transaction claim did not have standing to bring an individual claim against the same defendant based on commercial transactions. Nevertheless, the Third Circuit reversed the District Court's decision that the plaintiff could not serve as a representative of class members on their commercial transaction claims against the same defendant. The Third Circuit held that the plaintiff's individual claim was "closely related to the commercial transaction claim on which she lacks standing," and that it would therefore not be an abuse of discretion for the District Court to certify the class. *Id.* at 1085-89.

Here, the Section 36(b) claims of Plaintiffs are "closely related" to the Section 36(b) claims of the Class members who hold shares in other Funds. Under *Haas*, Plaintiffs are entitled to represent a class of investors in all the Lord Abbett Funds.

## B.     The Language of Section 36(b) is Consistent With Class Certification

Defendants may argue that class certification is precluded by the language of Section 36(b), which states that an action under that Section may be brought "on behalf of such

23

company." However, that language describes the individual claim that may be asserted by a

mutual fund investor. Nothing in the language of Section 36(b) states that the only form of

action that may be brought under that Section is an individual claim, nor does Section 36(b)

anywhere suggest that a plaintiff would be deprived of the normal right of all litigants to assert a

class claim as well as an individual claim if the requirements of Rule 23 are satisfied.

The fact that Plaintiffs assert their individual Section 36(b) claims for the benefit of their

Fund makes them no different from the many other class representatives who have individual

claims only by virtue of their positions as trustee, guardian, or similar capacity. Such persons

have routinely been certified as class representatives able to assert claims on behalf of others

who were similarly situated to their beneficiaries. *E.g.*, *Risinger v. Concannon*, 201 F.R.D. 16

(D. Me. 2001) (parents on behalf of their disabled children); *Woodward v. Online Information*

*Serv.*, 191 F.R.D. 502 (E.D.N.C. 2000) (guardian of legally incompetent plaintiff); *Prostic v.*

*Xerox Corp.*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,197 (D. Conn. July 19, 1991)

(securities fraud class action brought by representative of the estate of deceased investor).

"[T]here is nothing inherent in this status that would preclude fiduciaries or trustees from serving

as class representatives on behalf of their own beneficiaries as well as others similarly situated,

and many courts have so held." *Woodward*, 191 F.R.D. at 506 (quoting *Newberg on Class*

*Actions*, § 3.34 (3d ed. 1992)).

Interpreting Section 36(b) to have the intent of precluding class certification would

conflict with the congressional intent that gave rise to that Section. As described by the Supreme

Court in *Daily Income Fund,* 464 U.S. at 536-37, Section 36(b) was enacted in an effort to

strengthen the ability of mutual fund investors to protect their funds against overreaching by the

their advisors and affiliated companies.[18]  Congress sought to enhance the investors' ability to

sue, for example, by eliminating any requirement for a demand on the mutual fund's board of

directors and by giving the investor, rather than the fund, the right to sue.  Clearly Congress was

focusing on *expanding* investors' ability to protect their funds.[19]  It was not attempting to

preclude class treatment where that device would also serve the purposes giving rise to the

statute.

Here Congress' purposes will clearly be served by allowing class certification.  Given the

unitary nature of the entire complex of Lord Abbett Funds, for all practical purposes the

"company" referenced in Section 36(b), is the entire family of Funds.  Among other things, all

the Funds share expenses.  ¶ 81.  Therefore, a payment by any one Fund generally reflects

expenses incurred by another fund, and *vice versa*.  To provide relief to any Fund under Section

36(b) in this matter, an accounting will have to take place with respect to *all* the Funds.

The legislative history specifically references the existence of fund complexes such as the

Lord Abbett family of funds and confirms that, in such a situation, Section 36(b) requires the

---

[18]   The Congressional intent to strengthen the ability of investors to effectively redress
overreaching by mutual fund advisors and their affiliates is clear in the legislative history of
Section 36(b).  The bill introducing Section 36(b) was predicated on the SEC's findings in its
1966 Report on Investment Companies.  *See* Senate Report.  The 1966 Report, entitled "Public
Policy Implications of Investment Company Growth" (PPI) H.R. No. 2337, 89th Cong., 2d Sess.,
states:  "It has been the Commission's experience in the administration of the Act that in general
the unaffiliated directors have not been in a position to secure changes in the level of advisory
fee rates in the mutual fund industry.  *Id.* at 131.  The 1966 Report thus concludes:  "*In the
Commission's view, Section 36 should be broadly construed so as to effectuate the remedial
purposes of the Act.*"  *Id.* at 143 (emphasis added).

[19]   The Senate Report left no doubt of the desirability of stockholder access to the courts under
Section 36(b), stating:  "Therefore your committee has adopted the basic principle that, in view
of the potential conflicts of interest involved in the setting of these fees, there should be effective
means for the courts to act where mutual fund shareholders or the SEC believe there has been a
breach of fiduciary duty."  Senate Report at 2.

courts to evaluate the impact of defendants' wrongful conduct on the entire complex of funds. In discussing the addition of Section 36(b) to the ICA, the Senate Report stated:

> In the event that court action is brought to enforce this fiduciary duty of the investment adviser as to compensation or payments received by him, it is intended that the court look at all the facts in connection with the determination and receipt of such compensation, including all services rendered to the fund or its shareholders and all compensation and payments received, in order to reach a decision as to whether the adviser has properly acted as a fiduciary in relation to such compensation. *In the case of fund complexes, this could, under certain circumstances, include consideration of services rendered by such investment advisers to other funds in such complex and compensation or payments made by such other funds for such services.*

Senate Report at 15.

The above quotation shows that Congress recognized that the existence of an interrelated complex of mutual funds could require the courts to examine the impact of the advisers' activity on the entire group in order to make an informed decision as to whether the adviser was breaching its fiduciary duties and obtaining excessive compensation for itself or its affiliates under Section 36(b). The class certification proposed by Plaintiffs is the mechanism that will best accomplish this Congressional policy. It recognizes that the entire family of Funds is impacted by the issues raised, and that the interests of the entire family must therefore be represented if Section 36(b) is to achieve its purpose.

## VI.    THE CLAIMS AT ISSUE IN THIS MOTION ARE DIRECT IN NATURE

### A.    Plaintiffs' Section 36(b) Claim Is Direct

As discussed in Point V, the Supreme Court has held that Section 36(b) claims are "direct rather than derivative." *Kamen*, 500 U.S. at 108 (citing *Daily Income Fund*, 464 U.S. at 540).

Therefore, the direct and primary nature of Plaintiffs' Section 36(b) claims cannot be challenged here.[20]

Although recoveries under Section 36(b) go to the Fund rather than directly to the investors, the SEC has recognized that "it is largely a legal fiction to state that recovery obtained by a Section 36(b) action is on behalf of the company rather than the security holders." *See* SEC Brief as Amicus Curae in Support of Affirmance in *Daily Income Fund v. Fox* (Ex. H to Levy Cert. at p. 19 n.9). The Commission has further stated that, "while a recovery in a Section 36(b) suit would initially be paid to the investment company, the company would serve as a conduit for the benefit of holders of redeemable securities." *Id.* This statement by the agency whose expertise and initiative was the driving force in bringing about the enactment of Section 36(b) further confirms that the intent of that Section is to benefit mutual fund investors by providing them with a direct claim.

### B. Plaintiffs' State Law and Non-Section 36(b) Federal Claims are Direct Claims Suitable for Class Treatment

The issue of whether Plaintiffs' state law and federal non-§ 36(b) claims are direct or derivative is a question of state law. *Kamen*, 500 U.S. at 108-09; *Strougo v. Bassini*, 282 F.3d 162, 168 (2d Cir. 2002) (collecting cases). Under the laws of Maryland and Delaware, the states of incorporation of the Lord Abbett registrants, the injuries alleged here are direct.

---

[20] Indeed, the language of Section 36(b) recognizes that the shareholders of the fund are the persons harmed by paying excessive fees. Section 36(b) states that investment advisers have a fiduciary duty "with respect to the receipt of compensation for services, or of payments of a material nature, *paid by* [1] [a] registered investment company, *or* [2] *by the security holders thereof.*" (Emphasis added.) If Congress understood that solely the fund, rather than its shareholders, was harmed by payments of excessive fees, it would have been anomalous to provide an express statutory recovery under Section 36(b) for fees paid *by security holders* of the fund, rather than by the fund only.

1.      **Plaintiffs' State Law and Non-Section 36(b) Claims are Direct Claims Under Maryland Law**

To sue directly under Maryland law, a plaintiff-shareholder must allege an injury that is not simply "incidental" to the injury suffered by the corporation. *Waller v. Waller*, 187 Md. 185, 189 (1946). In *Waller*, the court stated:

> It is a general rule that an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder *though the injury may incidentally result in diminishing or destroying the value of the stock*. The reason for this rule is that the cause of action for injury to the property of a corporation or for impairment or destruction of its business is in the corporation, and such an injury, *although it may diminish the value of the capital stock, is not primarily or necessarily a damage to the stockholder*, and hence the stockholder's derivative right can be asserted only through the corporation.

187 Md. at 189-90 (emphasis added). Injuries to the corporation such as the director self-dealing at issue in *Waller* are quintessentially derivative because the injury is to the corporation and shareholders experience harm only *indirectly* through the possible loss of share value.

As discussed in the Statement of Facts, a substantial portion of the fees and expenses alleged to be excessive in this case impacts the class members directly. This is reflected in the language of the Lord Abbett Prospectuses and SAIs which, for example, state that class members' dividends will be reduced by such fees, confirm that 12b-1 fees are assessed against the accounts of each class of shareholder, and repeatedly describe such fees and expenses as directly impacting the investor.

Furthermore, even those fees and expenses that are purportedly paid out of the Funds' assets have a direct impact on mutual fund investors. Thus, companies such as the Lord Abbett Funds are very different from traditional corporations.[21] As the Second Circuit has explained:

---

[21] *See Kamen*, 500 U.S. at 93 ("Mutual funds pool the investment assets of individual shareholders"); *Burks v. Lasker*, 441 U.S. 471 (U.S. 1979) ("A mutual fund is a pool of assets,

> The mutual fund industry is in many ways unique . . . *A mutual fund is a "mere shell," a pool of assets consisting mostly of portfolio securities that belongs to the individual investors holding shares in the fund.*

*Tannenbaum v. Zeller*, 552 F.2d 402, 405 (2d Cir. 1977) (emphasis added).

Unlike traditional corporations, open-end mutual funds such as the Lord Abbett Funds are required to issue "redeemable securities,"[22] which are defined as "any security . . . under the terms of which the holder, upon its presentation to the issuer . . . is entitled . . . to receive approximately *his proportionate share of the issuer's current net assets*, or the cash equivalent thereof." 15 U.S.C. § 80a-2(a)(32).  The excessive fees and other charges about which Plaintiffs complain immediately reduced the Funds' net asset values per share.  Those charges immediately decreased the amount by which each shareholder was entitled to redeem his or her shares.  Excessive fees paid by mutual funds *or* their shareholders thus injure shareholders directly.

A mutual fund investment also differs from investing in a traditional corporation because it involves a service contract between the investor and the mutual fund.  In the words of the Seventh Circuit:

> A mutual fund share represents a fractional ownership in a large investment account.  *It is, in essence, a service contract between the investor and the investment company* whereby the investor places his money in the hands of the investment company in expectation of realizing a financial gain.

*Baum*, 409 F.2d at 874 (emphasis added).  As shown at pages 5-7, *supra*, Defendants' own prospectuses and SAIs contain repeated references to language acknowledging that the cost *to the shareholder* of investing in a Fund is not limited to the initial payment made to purchase the

---

consisting primarily of portfolio securities, belonging to the individual investors holding shares in the fund.").  *See also* ¶ 80.

[22]  *See* 15 U.S.C. § 80a-5 ("'Open-end company' means a management company which is offering for sale or has outstanding *any redeemable security* of which it is the issuer.") (emphasis added).

shares.  Rather that cost also includes the impact of the additional fees and expenses that are subsequently imposed in connection with this service aspect of a mutual fund investment.  This impact on the shareholder is thus direct and not derivative.

**2.      Plaintiffs' State Law and Non-Section 34(b) Claims are Direct Claims Under Delaware Law**

In *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004), the Supreme Court of Delaware stated that the issue of whether an action is derivative or direct under Delaware law "must turn *solely* on the following questions:  (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[23] As discussed above, the plaintiff-shareholders in these actions have suffered the alleged harm directly, and they would receive the benefit of a recovery.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for class certification and approve Plaintiffs as representatives of the Class.

---

[23] The Delaware Supreme Court thereby rejected prior case law requiring that a shareholder have suffered a "special injury" -- *i.e.*, an injury distinct from that suffered by other shareholders -- in order to bring a direct action. *Tooley*, 845 A.2d at 1038 n.21.  The *Tooley* Court also rejected precedent holding that "an action cannot be direct if all stockholders are equally affected or unless the stockholder's injury is separate and distinct from that suffered by other stockholders." *Id.* at 1038-39.

Dated: November 17, 2004

**SHALOV STONE & BONNER LLP**

By: _Patrick Rocco/knl_

      Patrick L. Rocco
Jennifer A. Sullivan
163 Madison Avenue, P.O. Box 1277
Morristown, New Jersey 07962-1277
Tel: (973) 775-8997

***Liaison Counsel for Plaintiffs and the Class***

**MILBERG WEISS BERSHAD**
  **& SCHULMAN LLP**
Jerome M. Congress
Janine M. Pollack
Kim E. Levy
Michael R. Reese
One Pennsylvania Plaza
New York, New York 10119
Tel: (212) 594-5300

**MURRAY, FRANK & SAILER LLP**
Marvin L. Frank
Eric J. Belfi
275 Madison Avenue
New York, New York 10016
Tel: (212) 682-1818

**LERACH COUGHLIN STOIA GELLER**
  **RUDMAN & ROBBINS LLP**
Samuel H. Rudman
Robert M. Rothman
200 Broadhollow, Suite 406
Melville, New York 11747
Tel: (631) 367-7100

**WEISS & LURIE**
Joseph H. Weiss
Richard A. Acocelli
551 Fifth Avenue
New York, New York 10176
Tel: (212) 682-3025

***Members of the Executive Committee for Plaintiffs
and the Class***

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland 21202
Tel:  (410) 332-0030

***Additional Plaintiffs' Counsel***

## AFFIRMATION OF SERVICE

I, Susan M. Greenwood, affirm that on the 17th day of November, 2004, I caused true

and correct copies of Notice of Motion for Class Certification, Plaintiffs' Memorandum of Law

in Support of Their Motion for Class Certification, the Certification of Kim Levy in Support of

Plaintiffs' Motion for Class Certification, and the Proposed Order Granting Plaintiffs' Motion for

Class Certification to be served by electronic mail and first class mail, postage prepaid, upon the

following parties:

Christopher Barbarisi, Esq.
**KIRKPATRICK & LOCKHART LLP**
One Newark Center, Tenth Floor
Newark, NJ 07102

Jeffrey B. Maletta, Esq.
**KIRKPATRICK & LOCKHART LLP**
1800 Massachusetts Avenue, N.W.
Washington, D.C. 20036-1221

Mary Sue Henifin, Esq.
**BUCHANAN INGERSOLL PC**
700 Alexander Park, Suite 300
Princeton, NJ 08540

Andrew Weissman, Esq.
**WILMER CUTLER PICKERING HALE & DORR**
2445 M Street, N.W.
Washington, D.C. 20037

Susan M. Greenwood