**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-1112

_____

IN RE: Lord Abbett Mutual Funds Fee litigation,
JOSEPH C. WHITE; JOSEPHINE LOGAN;
RICHARD CURTIS; BO BORTNER; JAMES A.
PINGITORE; PHILIP B. KATZ,

Appellants.

v.

LORD ABBETT & CO LLC; LORD ABBETT
DISTRIBUTOR LLC; TRACIE E. AHERN;
JOAN A. BINSTOCK; DANIEL E. CARPER;
ROBERT S. DOW; HOWARD E. HANSEN;
PAUL A. HILSTAD; LAWRENCE H. KAPLAN;
ROBERT G. MORRIS; A. EDWARD OBERHAUS, III;
EDWARD K. VON DER LINDE; MICHAEL BROOKS;
ZANE E. BROWN; PATRICK BROWNE;
JOHN J. DICHIARO; SHOLOM DINSKY;
LESLIE J. DIXON; KEVIN P. FERGUSON;
ROBERT P. FETCH; DARIA L. FOSTER;
DANIEL H. FRASCARELLI; ROBERT I. GERBER;
MICHAEL S. GOLDSTEIN; MICHAEL A. GRANT;

CHARLES HOFER; W. THOMAS HUDSON;
CINDA HUGHES; ELLEN G. ITSKOVITS;
MAREN LINDSTROM; ROBERT A. LEE;
GREGORY M. MACOSKO; THOMAS MALONE;
CHARLES MASSARE, JR.; STEPHEN J. MCGRUDER;
PAUL MCNAMARA; ROBERT J. NOELKE;
R. MARK PENNINGTON; WALTER PRAHL;
MICHAEL ROSE; ELI M. SALZMANN;
DOUGLAS B. SIEG; RICHARD SIELING;
MICHAEL T. SMITH; RICHARD SMOLA;
DIANE TORNEJAL; CHRISTOPHER J. TOWLE;
MARION ZAPOLIN

————————————

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Nos.  04-cv-00559; 04-cv-00965; 04-cv-01055;
04-cv-01057; 04-cv-01209 and 04-cv-01365)
District Judge:   Hon. William J. Martini

————————————

Argued on June 25, 2008


Before:  SLOVITER, BARRY and ROTH, <u>Circuit Judges</u>

(Opinion filed:  January 20, 2009 )

2

Jerome M. Congress, Esquire  **(Argued)**
Milberg Weiss, LLP
One Pennsylvania Plaza, 49th Floor
New York, NY   10119-0165

Patrick L. Rocco, Esquire
Shalov, Stone & Bonner
65 Madison Avenue, Suite 333
Morristown, NJ   07960

Mark Levine, Esquire
Stull Stull & Brody
6 East 45th Street
New York, NY   10017

Counsel for Appellants

Jeffrey B. Maletta, Esquire  **(Argued)**
Nicholas G. Terris, Esquire
Shanda N. Hastings, Esquire
Kirkpatrick & Lockhart Preston Gates Ellis, LLP
1601 K Street, N. W.
Washington, D. C.   20006

Christopher A. Barbarisi, Esquire
Kirkpatrick & Lockhart Preston Gates Ellis, LLP
One Newark Center, 10th Floor
Newark, NJ   07102

Counsel for Appellees

3

---

## O P I N I O N

---

**ROTH**, Circuit Judge:

Plaintiffs appeal the December 4, 2006, order of the U.S. District Court for the District of New Jersey, dismissing their action with prejudice pursuant to the Securities Litigation Uniform Standards Act of 1998 (SLUSA), 15 U.S.C. § 78bb(f). This appeal presents the question whether SLUSA requires the dismissal of the entire action when the action includes some state law class action claims that clearly may not be maintained under SLUSA as well as other claims that are not so prohibited. We hold that SLUSA does not require such a dismissal. Accordingly we will vacate the dismissal and remand this case for further proceedings.

## I.  **Factual and Procedural Background**

Plaintiffs are a proposed class of shareholders of mutual funds managed by Lord, Abbett & Co. LLC (Lord Abbett). On February 9, 2004, they filed this lawsuit against Lord Abbett and Lord Abbett Distributor LLC, the investment adviser and distributor of the Lord Abbett mutual funds.[1]  Following the consolidation of multiple related cases, plaintiffs filed a

---

[1] A number of other defendants are no longer in the case.

4

Consolidated Amended Class Action Complaint on August 16, 2004.

In their Consolidated Amended Class Action Complaint, plaintiffs alleged (among other misdeeds) that Lord Abbett charged its existing investors excessive fees that were improperly used to pay brokers to market Lord Abbett funds to other investors. Plaintiffs claimed that Lord Abbett was motivated to charge excessive fees because its management fees were based on the amount of assets being managed – as the number of investors grew so did the assets – and so did the fees. Plaintiffs alleged violations of both federal and state law, including violations of Sections 36(b) and 48(a) of the Investment Company Act of 1940, brought on behalf of the proposed class, and four state law counts, also brought on behalf of the class.

Defendants filed a motion to dismiss, based in part on the ground that plaintiffs' action was pre-empted by SLUSA, 15 U.S.C. § 78bb(f). As we recently explained in *LaSala v. Border et Cie.*, 519 F.3d 121, 127-28 (3d Cir. 2008), SLUSA was enacted as a supplement to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4 (PSLRA or Reform Act). Congress enacted the PSLRA to prevent the filing of "strike suits" – abusive class actions which are brought with the hope that the expense of litigation may force defendants to settle despite the actions' lack of merit. In Congress's view, such actions "unnecessarily increase the cost of raising capital and chill corporate disclosure . . .." S. Rep. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683. The PSLRA imposed

5

a number of requirements on federal securities litigation plaintiffs, designed to deter such frivolous suits.[2]

      In reaction to the rigors of the PSLRA, plaintiffs began filing cases in state courts under less strict state securities laws. Congress then enacted SLUSA, stating that

> [I]n order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Private Securities Litigation Reform Act of 1995, it is appropriate to enact national standards for securities class action lawsuits involving

---

[2]In particular, the PSLRA imposed heightened pleading requirements in fraud cases brought under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and SEC Rule 10b-5. The PSLRA requires that plaintiffs plead misleading statements "with particularity," 15 U.S.C. § 78u-4(b)(1), plead facts creating a "strong inference" of scienter, 15 U.S.C. § 78u-4(b)(2), and prove loss causation, 15 U.S.C. § 78u-4(b)(4). The PSLRA also "limit[s] recoverable damages and attorney's fees, provide[s] a 'safe harbor' for forward-looking statements, impose[s] new restrictions on the selection of (and compensation awarded to) lead plaintiffs, mandate[s] imposition of sanctions for frivolous litigation, and authorize[s] a stay of discovery pending resolution of any motion to dismiss." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006) (*Dabit II*) (citing 15 U.S.C. § 78u-4); *see also* 15 U.S.C. § 78u-5.

nationally traded securities, while preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits.

SLUSA, S. 1260, 105th Cong. § 2(5), 112 Stat. 3227.  The SLUSA Conference Report explains that

[S]ince passage of the Reform Act, plaintiffs' lawyers have sought to circumvent the Act's provisions by exploiting differences between Federal and State laws by filing frivolous and speculative lawsuits in State court, where essentially none of the Reform Act's procedural or substantive protections against abusive suits are available. . . . [A] single state can impose the risks and costs of its peculiar litigation system on all national issues.  The solution to this problem is to make Federal court the exclusive venue for most securities fraud class action litigation involving nationally traded securities.

H.R. Rep. No. 105-803, at 14-15 (1998) (Conf. Rep.) (internal quotation omitted).

Accordingly, SLUSA barred certain class actions and mass actions from state courts, providing in relevant part:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained

7

in any State or Federal court by any private
party alleging –

> (A) a misrepresentation or omission
> of a material fact in connection
> with the purchase or sale of a
> covered security; or

> (B) that the defendant used or
> employed any manipulative or
> deceptive device or contrivance in
> connection with the purchase or
> sale of a covered security.

15 U.S.C. § 78bb(f)(1). Under SLUSA, a "covered class action"
brought in state court may be removed to federal court and is
subject to the above limitations. 15 U.S.C. § 78bb(f)(2).

SLUSA defines the term "covered class action" as:

(i) any single lawsuit in which –

> (I) damages are sought on
> behalf of more than 50
> persons or prospective class
> members, and questions of
> law or fact common to those
> persons or members of the
> prospective class, without
> reference to issues of
> individualized reliance on

8

an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which –

(I) damages are sought on behalf of more than 50 persons; and

9

> (II) the lawsuits are joined,
> consolidated, or otherwise
> proceed as a single action
> for any purpose.

15 U.S.C. § 78bb(f)(5)(B).

SLUSA is frequently described as "pre-empting" state-law claims. However, as the Supreme Court has explained, SLUSA does not actually "pre-empt" such claims; it merely "denies plaintiffs the right to use the class-action device to vindicate certain claims." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 87 (2006) (*Dabit II*). Plaintiffs retain the right to bring such a claim as an individual state-law claim or federal securities fraud class action claim. *LaSala*, 519 F.3d at 129.

On August 30, 2005, the District Court dismissed the four state claims pled in plaintiffs' Consolidated Amended Class Action Complaint as pre-empted by SLUSA.[3] The District Court also dismissed the remaining federal claims for failure to state a claim. With respect to plaintiffs' claims for violations of Sections 36(b) and 48(a) of the Investment Company Act of 1940, the District Court determined that there is no direct cause of action under Section 36(b), which was a predicate for the

---

[3]The District Court issued an amended order and opinion on December 28, 2005. *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616 (D.N.J. 2005).

10

Section 48(a) claim, and dismissed those claims without prejudice.

Plaintiffs filed a Second Amended Complaint on September 29, 2005, asserting only two derivative claims alleging violations of Sections 36(b) and 48(a) of the Investment Company Act. In general, plaintiffs alleged that Lord Abbett had received excessive management fees from its investors, primarily because it had failed to pass along the benefits of the economies of scale achieved as the funds grew.

Meanwhile, on September 14, 2005, defendants moved for reconsideration of the District Court's decision to dismiss the claims without prejudice, in part on the grounds that SLUSA requires dismissal of the entire action not merely dismissal of the improper state law securities claims. Without reaching the issue, the District Court denied the motion as lacking sufficient grounds for reconsideration but subsequently granted the defendants leave to brief the issue for *de novo* consideration. Accordingly, on May 3, 2006, defendants filed a motion to dismiss the Second Amended Complaint pursuant to SLUSA.[4]

_____

[4]On February 21, 2006, defendants filed a motion to dismiss on the grounds that (1) plaintiffs' claims were time barred under the one-year look back period of Section 36(b)(3), and they contain no relevant allegations addressing the relevant time frame; (2) section 17 of the Investment Company Act prohibits plaintiffs from bringing a common action on behalf of multiple Lord Abbett funds; (3) plaintiffs failed to state a claim under Section 36(b) of the Investment Advisers Act; and (4) section

11

The District Court granted the motion and dismissed the Second Amended Complaint with prejudice on December 4, 2006. The District Court referred to our opinion in *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005), where, in response to the plaintiffs' argument that the court should examine each count separately to determine whether it should be pre-empted, we noted in *dictum*:

> [W]e question whether preemption of certain counts and remand of others is consistent with the plain meaning of SLUSA. The statute does not preempt particular 'claims' or 'counts' but rather preempts 'actions,' 15 U.S.C. § 78bb(f)(1), suggesting that if any claims alleged in a covered class action are preempted, the entire action must be dismissed.

*Id.* at 305. As the District Court acknowledged, we did not reach this issue in *Rowinski* because in that case the plaintiff had incorporated pre-empted state-law allegations into every count of his complaint. *Id.*[5] However, the District Court found

---

36(b) does not apply to 12b-1 fees. This motion was briefed by the parties, but the District Court never ruled on it.

[5]Citing *Rowinski* and the District Court's opinion in this case, the Tenth Circuit recently dismissed an entire complaint as pre-empted under SLUSA where the plaintiffs had incorporated their general class allegations into each of their claims, each of which was based on state law. *Anderson v. Merrill Lynch,*

12

*Rowinski* "helpful" in that it "provide[d] strong support, albeit in *dicta*, for the proposition that SLUSA preempts entire class actions rather than individual claims."[6]

The District Court then turned to the statutory language. The District Court noted that, by its own terms, SLUSA pre-emption applies to any "covered class action," which is in turn defined as "any single lawsuit" or "group of lawsuits," and concluded that this language reflects Congress's intent to regulate entire lawsuits. The District Court reasoned further that Congress has used the word "claim" or "claims" elsewhere in the securities laws, including in the PSLRA, and that Congress

––––––––––––––––––

*Pierce, Fenner & Smith, Inc.*, 521 F.3d 1278, 1287 n.6 (10th Cir. 2008). As such, the Tenth Circuit did not have to decide "whether, in another action, SLUSA would permit the preclusion of certain claims and the remand of others." *Id.*

[6]The District Court similarly cited the U.S. District Court for the District of New Jersey's holding in *LaSala v. Bordier et Cie.*, 452 F. Supp. 2d 575 (D.N.J. 2006), in which the district court dismissed Swiss law claims that incorporated by reference and were clearly tied to the allegations supporting the state law securities claims. We reversed, noting that "by its terms [SLUSA] only affects claims based upon the laws of a state or territory of the United States." *LaSala v. Bordier et Cie.*, 519 F.3d 121, 143 (3d Cir. 2008). We did not have to reach the question presented here, however, namely "[w]hether a single offending claim requires dismissal of the entire action . . .." *Id.* at 129 n.6.

presumably would have used a narrower term than "action" if it intended otherwise.

The District Court acknowledged that the Court of Appeals for the Second Circuit had addressed the present issue in *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005) (*Dabit I*), holding that SLUSA does not require the dismissal of an entire case where only some of the claims are improper state law claims under SLUSA.[7] In *Dabit I*, the court acknowledged that SLUSA's provisions might be read as prohibiting maintenance of an entire action that includes pre-empted state-law allegations. 395 F.3d at 47. The court, however, declined to hold that SLUSA operated in this manner, reasoning that,

> On this reading, SLUSA would effectively preempt any state law claim conjoined in a given case with a securities fraud claim, whatever its nature. We assume, however, that the historic police powers of the states are not preempted unless it was Congress's 'clear and manifest purpose' to do so.

---

[7]The Second Circuit subsequently reiterated its holding that SLUSA does not require dismissal of an entire action that includes only some pre-empted claims in a non-precedential opinion. *Gray v. Seaboard Secs., Inc.*, 126 Fed. Appx. 14, 16 (2d Cir. Mar. 9, 2005).

14

*Id.* (quoting *City of Milwaukee v. Illinois*, 451 U.S. 304, 316 (1981)).

The Supreme Court reversed the Court of Appeal's holding on other grounds, ruling that SLUSA pre-empts state law claims alleging fraud brought by investors who held securities, as well as by those who purchased or sold securities. *Dabit II*, 547 U.S. at 71. The Supreme Court explained,

> In concluding that SLUSA pre-empts state-law holder class-action claims of the kind alleged in Dabit's complaint, we do not lose sight of the general 'presum[ption] that Congress does not cavalierly pre-empt state-law causes of action.' *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). But that presumption carries less force here than in other contexts because SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims. The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist.
>
> Moreover, the tailored exceptions to SLUSA's preemptive command demonstrate that Congress did not by any means act 'cavalierly' here. The statute carefully exempts from its operation certain class actions based on the law of the State

15

in which the issuer of the covered security is incorporated, actions brought by a state agency or state pension plan, actions under contracts between issuers and indenture trustees, and derivative actions brought by shareholders on behalf of a corporation.   15 U.S.C. §§ 78bb(f)(3)(A)-(C), (f)(5)(C).

*Dabit II*, 547 U.S. at 87.

In dismissing plaintiffs' entire action in the present case, the District Court acknowledged that, in *Dabit II*, the Supreme Court had not specifically addressed whether preemption of one claim under SLUSA requires dismissal of the entire action. However, because the presumption against pre-emption had underpinned the Second Circuit's analysis, the District Court found that the Supreme Court's decision in *Dabit II* had "weakened, if not undercut entirely," the Second Circuit's reasoning that SLUSA does not require dismissal of the entire action.

The District Court also concluded that reading SLUSA as pre-empting entire actions would not produce absurd results, rejecting plaintiffs' claim that applying SLUSA to require the dismissal of an entire action would encourage the filing of multiple lawsuits based on the same set of facts in order to segregate state and federal claims. The District Court found that Congress had addressed this potential problem by treating "any group of lawsuits" as a "covered class action" for purposes of SLUSA.

16

Plaintiffs appealed.  They contend that the District Court erred in concluding that SLUSA requires dismissal of an entire action.  Defendants urge us to affirm the District Court's holding or, in the alternative, to affirm the motion to dismiss on the grounds that there is no private right of action under Section 48(a) of the Investment Company Act and that plaintiffs have failed to state a claim under Section 36(b).  Because we agree that SLUSA does not require dismissal of an entire action that includes some claims that are not pre-empted by SLUSA in addition to some that are, we will vacate the District Court's dismissal and remand this action to the District Court for further proceedings.

## II.  Discussion

The District Court had jurisdiction pursuant to the Investment Company Act of 1940, 15 U.S.C. § 80a-43, the Investment Advisers Act of 1940, 15 U.S.C. § 80b-14, and 28 U.S.C. § 1391(b).  We have jurisdiction over this appeal from a final judgment of the District Court pursuant to 28 U.S.C. § 1291.  "SLUSA preemption is jurisdictional, and we review dismissals for lack of subject-matter jurisdiction *de novo*." *LaSala*, 519 F.3d at 129 n.7 (3d Cir. 2008).

As described above, SLUSA was enacted to prevent the flight of securities cases from federal to state courts, thereby preventing abusive lawsuits and "mak[ing] Federal court the exclusive venue for most securities fraud class action litigation involving nationally traded securities." H.R. Rep. No. 105-803, at 15 (1998) (Conf. Rep.); *see also* Securities Litigation Uniform Standards Act of 1998, S. 1260, 105th Cong. § 2(5),

112 Stat. 3227.  Neither the Supreme Court nor this Court has squarely addressed the issue raised in this appeal:  whether the inclusion of a SLUSA pre-empted state-law claim in a complaint, also alleging non-SLUSA pre-empted claims, requires dismissal of the entire action.  In considering this issue as a matter of first impression, and mindful of SLUSA's purpose, we conclude that neither the statutory language, the legislative history, nor the relevant case law supports the complete dismissal of such an action.

"The role of the courts in interpreting a statute is to give effect to Congress's intent."  *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001).  The first step in statutory construction is to consider the plain language of the statute. *United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000).  "If the language of the statute expresses Congress's intent with sufficient precision, the inquiry ends there and the statute is enforced according to its terms."  *Id.*  "Where the statutory language does not express Congress's intent unequivocally, a court traditionally refers to the legislative history and the atmosphere in which the statute was enacted in an attempt to determine the congressional purpose."  *Id.*

The plain language of SLUSA does not clearly indicate whether Congress intended SLUSA to pre-empt entire actions that include an offending state-law claim.  SLUSA provides, "No covered class *action* based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court . . .."  15 U.S.C. § 78bb(f)(1) (emphasis added).  The term "covered class action," in turn, is defined to include a "single lawsuit" or "*group* of lawsuits."  *Id.*

18

at § 78bb(f)(5)(B) (emphasis added).   As we suggested in *Rowinski*, the terms "no . . . action," "lawsuit," and "group of lawsuits" indeed suggest that SLUSA intends that entire actions, as opposed to particular claims, should fail.  398 F.3d at 305.  However, the word "action" is modified by the phrase "based upon the statutory or common law of any State."  15 U.S.C. § 78bb(f)(1).   The plain language of SLUSA does not refer to actions, such as this one, based *in part* on state law.

Nor does the legislative history compel us to conclude that SLUSA requires dismissal of the entire action in such a case.   The legislative history is silent as to whether Congress intended an action to be dismissed in its entirety when it includes pre-empted claims or whether only the pre-empted claims must be dismissed.  We struggle to see how permitting federal claims that do not specifically trigger the SLUSA preemption to proceed would lead to either abusive litigation or to the application of different legal standards to national securities.  Failing to dismiss the entire complaint would simply allow class action federal claims, and state law claims that do not trigger the SLUSA preemption, to proceed.  Nothing in SLUSA's language or history indicates any intent to eviscerate such claims.

Of course, requiring the dismissal of an entire action pursuant to SLUSA might deter class action plaintiffs and their attorneys from attempting to test the boundaries of which individual state law claims are pre-empted by SLUSA.  However, nothing in either the plain language of the statute or

19

the legislative history suggests that Congress intended SLUSA
to have such a punitive effect.[8]  Even if SLUSA were interpreted

_____

[8] In *In re Enron Corporation Securities*, 535 F.3d 325 (5th
Cir. 2008), the Court of Appeals for the Fifth Circuit recently
suggested that plaintiffs (or, perhaps, their attorneys) faced risk
of dismissal pursuant to SLUSA where they chose to pursue pre-
empted state law claims in multiple lawsuits each involving
fewer than fifty plaintiffs.  In *In re Enron*, the court held that,
where the lawsuits were coordinated and nearly identical, ten
cases consolidated in multi-district litigation were a "covered
class action" for purposes of SLUSA, notwithstanding that prior
to removal and consolidation each case might have escaped
SLUSA pre-emption based on the number of plaintiffs.  *Id.* at
340.

        In so doing, the court rejected the plaintiffs' argument
that preempting their claims would lead to an absurd result in
the context of multi-district litigation, noting, "[T]he . . .
plaintiffs brush aside their own contribution to SLUSA
preemption: choosing to proceed as a single action. . . . [T]hey
must now face the consequences."  *Id.* at 342.  "[T]he issue here
is not whether [plaintiffs] *may* avoid SLUSA; the question is
whether they *did* in fact avoid SLUSA."  *Id.* at 342 n.15.

        While this language may suggest that SLUSA can have
a punitive effect, the Fifth Circuit was not presented with, and
therefore did not consider, the issue presented in this case.  The
question presented here, whether SLUSA requires dismissal of
an entire complaint where only some of the claims are pre-
empted state law claims, is very different from the question of

20

this way, plaintiffs could simply bring two or more actions in order to avoid having all of their claims dismissed – one action with the potentially pre-empted state law claims and one or more with the remaining claims.

It is entirely consistent with the purposes of SLUSA to require the dismissal of those state law securities claims that are clearly pre-empted by the statute. To require the dismissal of all of the other claims in the same action, in contrast, would not appear to serve those goals and is not supported by the plain language or legislative history. We hold therefore that SLUSA does not mandate dismissal of an action in its entirety where the action includes only some pre-empted claims.

Our understanding of SLUSA's requirements with respect to dismissal is not inconsistent with relevant case law. We disagree with the District Court's conclusion that the Supreme Court's holding in *Dabit II* "implicitly rejected the Second Circuit's view" of the issue presented in this case. In *Dabit II*, the Supreme Court was confronted with the issue of whether a state law class action claim based on the fact that the investors held onto overvalued securities as a result of misrepresentations by the brokers was pre-empted by SLUSA. *Dabit II*, 547 U.S. at 76-78. The Second Circuit had held that SLUSA did not pre-empt such an action because, pursuant to *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), the "holder" plaintiffs had no remedy for the alleged fraud under

---

whether plaintiffs may avoid SLUSA pre-emption altogether by filing multiple lawsuits.

21

federal securities laws. *Dabit I*, 395 F.3d at 39-44. In reversing, the Supreme Court determined that, in light of SLUSA's stated purpose to prevent frustration of the PSLRA, "[i]t would be odd, to say the least, if SLUSA exempted that particularly troublesome subset of class actions [holder actions] from its pre-emptive sweep." *Dabit II*, 547 U.S. at 86.

With respect to the Supreme Court's observation in *Dabit II* that the presumption against pre-emption "carries less force . . . because SLUSA does not actually pre-empt any state cause of action," *id.* at 87, the observation on which the District Court relied, our holding today does not in any way lessen SLUSA's "pre-emptive sweep." State law securities claims alleging fraud will continue to be pre-empted under SLUSA. We hold simply that any valid federal claims pled in the same action – claims that, if brought independently, would clearly fall outside of SLUSA's pre-emptive scope – need not also be dismissed.

Nor does the Supreme Court's decision in *Kircher v. Putnam Funds Trust*, 547 U.S. 633 (2006), compel us to hold that SLUSA requires dismissal of an action in its entirety. In *Kircher*, the Supreme Court held that SLUSA does not exempt remand orders from the general rule of nonappealability of 28 U.S.C. § 1447(d).[9] 547 U.S. at 648. Our conclusion today does

---

[9]Section 1447(d) provides, "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise."

no injury to this holding, for the *Kircher* opinion did not rely on any requirement that an action, including at least some impermissible state law claims, must be dismissed in its entirety.[10]   This issue was not even presented to the Court; indeed, the complaint in *Kircher* included only state-law claims. *Id.* at 637.

Other case law supports our holding.  While not directly on point because it addresses another statute, the Supreme Court's recent holding in *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), suggests that Congress's use of the phrase "no action" in a statute is not necessarily determinative of whether a preclusion provision requires dismissal of the entire action.  In *Jones*, the Supreme Court held that the Prison Litigation Reform Act, which provides, "No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted," 42 U.S.C. § 1997e(a), does not require

---

[10]It is true that the *Kircher* opinion includes some language to this effect.  The Supreme Court stated, for example, "If the *action* is precluded, neither the District Court nor the state court may entertain it, and the proper course is to dismiss."  547 U.S. at 644 (emphasis added).  The Court also noted, "[SLUSA] avails a defendant of a federal forum in contemplation not of further litigation over the merits of a claim brought in state court, but of termination of the proceedings altogether . . .."  *Id.* at 644 n.12.  Given that the Supreme Court did not have to confront the issue at hand, we do not believe that the use of the words "action" and "proceedings" reflects a holding as to this issue.

23

dismissal of an entire action where the plaintiff has failed to exhaust some, but not all, of his claims.  127 S.Ct. at 923-26.

Rejecting the argument that Congress could have used the word "claim" instead of "action" if it intended to prohibit only the filing of particular claims, the Supreme Court explained, "This statutory phrasing – 'no action shall be brought' – is boilerplate language."  *Id.* at 924.  The Supreme Court continued,

> As a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad. [O]nly the bad claims are dismissed; the complaint as a whole is not.  If Congress meant to depart from this norm, we would expect some indication of that, and we find none.

*Id.* (internal quotation omitted).

Although *Jones* did not involve SLUSA, its analysis suggests that the fact that SLUSA provides, "No covered class action . . . may be maintained," does not require dismissal of an entire action that includes only some offending claims.  At least one court, albeit non-binding on this Court, has found *Jones* helpful in deciding the present issue and likewise determined that SLUSA does not require a complete dismissal.  *See In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d 332, 334 n.3 (S.D.N.Y. 2007) (rejecting the argument that all claims must be dismissed under SLUSA); *LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246, 274-75 & 274 n.11

24

(S.D.N.Y. 2007) (holding that *Dabit I* remains the law of the Second Circuit regarding whether the entire action should be dismissed, and rejecting the District Court's analysis of *Dabit I* in this case).

Because nothing in the language, legislative history, or relevant case law mandates the dismissal of an entire action that includes both claims that do not offend SLUSA's prohibition on state law securities class actions and claims that do, the District Court erred in dismissing this action on these grounds. Allowing those claims that do not fall within SLUSA's pre-emptive scope to proceed, while dismissing those that do, is consistent with the goals of preventing abusive securities litigation while promoting national legal standards for nationally traded securities.

We decline defendants' request to affirm the dismissal of this case on alternative grounds, in particular, that plaintiffs' complaint fails to state a cause of action under Section 48(a) because no private right of action exists under that provision and that plaintiffs have failed to state a claim under Section 36(b).[11] These alternate grounds, along with a number of other possible bases for dismissal, were all briefed before the District Court in a separate motion to dismiss, which was pending when the District Court dismissed the case on SLUSA grounds. The alternate grounds for dismissal would be better decided by the District Court in the first instance.

---

[11]At oral argument, counsel for plaintiffs indicated that they are no longer pursuing their claims under Section 48(a).

25

**IV.  <u>Conclusion</u>**

For the reasons set forth above, we will vacate the District Court's order dismissing the entire action on the grounds that it is pre-empted by SLUSA and remand the case for further proceedings consistent with this Opinion.

26